We'll turn to argument next in No. 22-406, MSC Mediterranean Shipping Company S.A. v. Airlift USA, Incorporated. I'll wait for counsel to get settled. Mr. Kunkin. Good morning, Your Honors. May it please the Court, my name is Mark Kunkin and I'm here on behalf of Defendant Appellant Airlift. Airlift contends that the District Court erred in concluding that the terms of the MSC bill of lading applied after this container left the port of discharge. To the extent that the bill of lading did apply after the container left the port of discharge, Airlift contends that the District Court erred in its application of Atlantic Ridge Field, which held that Atlantic Ridge Field, as a claimant for indemnity, failed to prove that it was potentially liable and the underlying claimant was not entitled to indemnity. Here the District Court reached a conclusion that the injury was sustained but for an approximate cause being the improper loading of a container. The container was loaded by the shipper in India. The actual party that loaded the container was not part of the underlying case. The District Court then concluded that MSC settled all the claims, including the improper loading of the container, not just the claims it was liable for. In doing so, the District Court noted that MSC... What liable for? What do you mean? Liable to the plaintiff in the state court action or contractually liable for between the various indemnification or warranty agreements between the parties? Liable for and to the plaintiff in the underlying action. Well, MSC was the shipper and owner of the container, wasn't it? MSC was the ocean carrier and the owner of the container. They did not load the container and were not liable for... Under state law, they were not liable to Mr. Driver when he's injured in unloading the container and one of the potential sources of injuries is a defect in the container that MSC owned? The defect is the other issue where I was going for. MSC is liable... I apologize. Speak up. My apologies, Your Honor. The defect is a separate issue and I agree that they had potential liability for the defect in the container. That was an area that they were potentially liable for and the District Court found that. They were not potentially liable for the improper loading, so there were different theories of causation. Here, the loading, the improper loading, was the but-for and the proximate cause. Well, it's confusing, I agree, but the court's determination about actual causation, I think, is directed at understanding whether there's an indemnification arrangement that's triggered between you and the MSC. But the potential liability or causation, other potential liabilities, I mean, MSC doesn't have to roll the dice with a jury verdict to have a jury decide whether it is or isn't liable. It's potentially liable to a driver for a defect that was identified in the container, wasn't it? Yes, and with regard... So it's got a reason to decide to settle, doesn't it? MSC had a reason to settle. Agreed. Okay, so now it's got a reason to decide to settle and it's got an arrangement with Airlift that Airlift warrants that the goods are packed and loaded in the container correctly, doesn't it? Yes, Your Honor. All right, that's 11.4, I think. Yes. And Airlift also warrants and guarantees that it will indemnify MSC of MSC's cast and liability with regard to anything that arises from the contract, right? There is an exception in 11.2 to that warranty, and that's for defects that are non-apparent. Okay. And it's that non-apparent defect in the floor of the container that gives rise to MSC's... The problem is you weren't there. This wasn't litigated in that context, and so you don't know that. So the question was, was MSC potentially liable to the driver? And then if it was, was there indemnification responsibilities under the arrangement to MSC, right? Yes, and I do believe that the potential liability basis must line up with the indemnity obligation under the bill of lading. I don't think that happens here. Here, the potential liability related solely to the non-apparent defect, which is excluded from the indemnity obligation under 11.2. Were you liable to MSC if the cause of driver's injury was poor packing? MSC settled the poor packing claim. It did so as a volunteer. No, no. Answer my question. I'm sorry, Your Honor. Were you required to pay MSC or were you required to indemnify MSC if ultimately there was a determination that the goods were poorly packed? If there was a determination that MSC was liable for the poor packing, then yes, I would say to that question. But there was no theory upon which MSC could be liable for the poor packing to a third party when MSC received a port-to-port container that was loaded and sealed by the shipper. So you're saying it's impossible that the result of the New Jersey proceeding could have been that MSC was liable for the packing? Correct, Your Honor. But, of course, it was possible that a jury could decide that the floor was the cause of the injury. In fact, one of the expert witnesses said that that was the cause of the injury, right? Correct, Your Honor. And it could be both the packing and the floor, and if the packing was – I'm sorry, if the floor was 60 percent or more of the cause, then MSC would have been liable for the whole thing too, right? Under New Jersey law, that's correct, Your Honor. So there was a possibility that MSC would be liable for the whole thing. That is correct. So I guess I have the following question. Why is it enough for us to say that MSC was potentially liable for one of the – to diver for one of the reasons – one of the matters enumerated in 11.2, and that's it? I mean it's a little confusing that the district court goes into this analysis about what the actual cause is. Why do we need to determine what the actual cause is? So if it's possible that one outcome of this litigation was that the jury would hold MSC liable for all the injuries based on the theory of the floor or the packing or some combination of both of them, isn't that enough? Don't they just have to show that potentiality in order to get indemnification? Does the district court really need to decide what the actual cause was? The actual jury that heard the witnesses never made that determination. Why are we doing that here? I don't think that's sufficient, Your Honor, because once again any defect in the floor was non-apparent and is excluded from the indemnity obligation. And when we look at the – But is it impossible that a jury could have decided that it was apparent? All of the witnesses from MSC stated that there was no apparent defect. Well, that's not true because witnesses said that they saw the floor and it was squishy and they stepped – Right.  That was after the container was delivered in the U.S. At the time the container is loaded, which is the point in time that matters for the apparent defect language in MSC's bill of lading, this container just had its floor repaired. It was the first use of the container. MSC had it inspected after the repairs. All of those individuals and specialists testified there was no defect in that container, nothing observed. It was then given to the shipper, at which point the shipper accepts it as it is and is not liable under the MSC bill of lading for non-apparent defects. Like MSC, the shipper doesn't see any defects, uses it. When it completes a transatlantic journey and gets delivered in New Jersey to the warehouse facility, that's the first time we have testimony that somebody observes a potential issue with the floor. And for that reason, I think the non-apparent defect – So I get your point, and I kind of want to explore that a little bit. I guess I have the following question, which is a jury – couldn't a jury conclude that based on the idea of the defect being apparent upon delivery, it would have been apparent at the outset? Like a jury could conclude that. I'm not saying it's necessarily the right answer, but there was testimony that would allow for that inference. There was no testimony about the preconditioned container having an apparent defect, and I don't believe the issue would have been submitted to the jury. I believe those witnesses and believe the witnesses that testified as to the condition of the floor at the time of its arrival in the United States. But the testimony doesn't conflict. It coincides. It is easily foreseeable that an improperly loaded container with this much weight of marble – This is all hypotheticals about what a jury would or wouldn't do. Well, just to go back to what you're talking – We're talking jury, but of course this was a bench trial, and the only question is whether the court made findings on this that are so lacking in evidentiary support that they are impermissible. Isn't that right? Yes. So we have to credit – we have to look at this in the light most favorable to the findings that were made to the verdict that was rendered. And to that extent, even though you're pointing out that there were no pre-shipment observations of damage, the district court was not obliged to credit that but rather could have credited that what was seen after the fact had to have existed before. Or am I mistaken? The position, Your Honor, is that under Atlantic Richfield, MSC needed potential liability as well as an indemnity claim under the contract. Under the contract, the non-apparent defect had to – sorry. Under the contract, the defect must have been apparent at the time the container was loaded for MSC to be entitled to indemnity. But my question, and perhaps I wasn't clear, is the district court could have discounted, not credited, the testimony of the witnesses who said I didn't see anything. That was every witness in the case before loading. Okay. Well, it's not – I mean, Diver said that when he opened the container, he noticed the problem with the floor and took pictures of it, right? In New Jersey, yes, Your Honor. Upon opening it. Yes, Your Honor. After it traveled across the Atlantic. So I understand. So your argument as well, it wasn't apparent before it left India but became apparent in the travel. That's – But somebody could conclude that if it was apparent upon opening the container, it would have been apparent. I believe the nature of a non-apparent defect is that it will surface over time. And here the container was loaded with – Right. So there might be a question about when it would surface. Yes, Your Honor. And then I guess I have this other question. So in Diver's suit, right, he does sue MSC for the packing. That is one of the allegations, yes. So he does seek to hold them liable for the packing. You're just saying we should conclude that it would have been impossible for the jury to actually hold MSC liable for the packing. And I also point out that the district court came to the conclusion that MSC was not liable for the poor packing. Right. And so that takes me back to my original question, which was just the function of these two different findings by the district court. One about the actual cause and one about potential liability. But it sounds like we're talking a lot about whether MSC was potentially liable. Did the district court need to make a finding about what the actual cause of the injury was? Why isn't the potential liability enough? I don't believe the district court had to make a finding of actual liability, but the district court did. Okay, it did. So we'll deal with that in a second. But so let's say it didn't. Let's say the district court had just decided MSC was potentially liable to divert for one of the conditions listed in 11.2. And because of that potential liability, it's entitled to indemnification. Would that have been a defensible approach? Well, that is now why we're here on that argument, because I'm saying under 11.2, if the defect's not apparent, they're not entitled to indemnification. I see. So you're saying that actually we should focus on that argument. Yes. But you have a different argument, which is, well, the district court's decision that the actual cause was the packing sort of overrides the potential liability finding because it determined that that was the real cause. And so MSC actually wasn't potentially liable because the liability fell on the packing. No, I think the district court's actual finding will help in terms of if MSC was liable for a reason that is entitled to indemnity, that would support apportionment at that point. Because the but-for in the finding of the district court takes the MSC potential liability element out of the 60 percent probability. Okay. All right. Well, Mr. Kunken, you've reserved time for a rebuttal, so we'll hear from you again. Let's turn to Mr. Werner. Good morning. May it please the court. I'd like to pick up on where the questioning left off. And there's two textual portions of Clause 11 that I want to bring to the court's attention, which I think will clarify some of the questions raised today. The first thing is if you look at Clause 11.4, which is the language that triggers the indemnity obligation, it says specifically, the merchant shall indemnify the carrier against any loss, damage, liability, or expense whatsoever and howsoever arising. Now, I want to focus the court's attention on that whose loss are we talking about? We're talking about MSC's loss, not Mr. Diver's injuries, not damage caused to Mr. Diver. So you're looking at something that causes MSC to suffer a loss. Well, being sued in New Jersey State Court on a personal injury claim is definitely a loss. It's a total indemnification clause. Right. And then look at the breadth of it. It says any loss, et cetera, whatsoever and howsoever arising. It couldn't be broader. Well, it's loss caused by one or more of the matters referred to in Clause 11.2. Yeah. There are certain triggers that have to be met. But I mean I think you would agree. Like let's – if there was something that happened that was covered by 11.2, but there was just no theory in the world by which MSC could be liable for it, but MSC just went out of its way to go and compensate somebody for that injury, they probably would not be entitled to indemnification, right? I agree. Right. So then that's the question we have here. Right. But I think that's why the court – the district court did try to make a determination of actual causation. But the actual causation analysis should have focused on what actually caused MSC to suffer a loss, not necessarily what actually caused Mr. Diver's injuries. There is a subtle distinction there. Let me play it out for you. Suppose that – we all agree I think the actual packing of the container was problematic. I mean my friend here doesn't even dispute that on appeal. So we know that Mr. Diver's injuries were caused at least in part by the improper packing of the container. And the result of that with his injuries is he decided to sue MSC. And that caused MSC to suffer a loss for which it's entitled to indemnity. Now we also separately under Atlantic Gridsfield have to show that MSC was exposed to potential liability to justify its settlement. And we all agree that MSC was subject to claims by Mr. Diver relating to the defect in the container. Right. So that's sufficient. But you're saying that the loss was caused by the packing, but MSC was not potentially liable for the packing. Well, I disagree. Well, they are to Mr. Diver, aren't they? Yes. I mean the fact that there are contractual indemnification or side arrangements with regard to ultimately who's going to bear the loss is different from an injured party on a state tort claim going against the owner of the container, the shipper of the container, who then he comes into the container and that shipper also somehow has laid off or hired somebody else to pack it. It's the shipper versus Mr. Diver. I mean that's who he's going to sue. Right. Our name is on the container. We're the big defendant with all the money and insurance. Let's say we had actually a verdict or something from the state case. Let's say that there was a determination that actually the packing was mostly responsible for the injury, and therefore the packer responsible for $1 million in damages, but the floor was a contributor, and so MSC was liable for $5 in damages. It's a very small contributor. But MSC just went ahead and said, okay, I'll pay you the full $1 million and $5. Would then they be entitled to indemnification? No, their indemnity would be limited to the amount that they actually – To the $5. Yeah, I mean but that's – But the difference here is the settlement. I mean the fact is is that they didn't participate at all. They appeared but didn't participate, and they sat back at an opportunity when knowing that there's a claim concerning packing and that there can be liability which would trigger their indemnification requirements, and then the test is whether they were potentially liable. Because if the deck is stacked when there's a settlement negotiation and the indemnity, you, tries to get out from underneath the liability so that you can lay it all on the indemnitor, that's not fair. So that's what the potentially liable claim is about. Were they really potentially liable? And that's what the judge made a determination. That seems to me to be the end of it. Sorry, go ahead. I also agree that the proper standard is clear error for those factual determinations. That seems like you're saying that there should have been different factual determinations, right? So the district court says that it was caused by the packing, right? That's the cause of the injuries, and the potential liability was based on the floor. So it looks a little bit like my hypothetical where, like, somebody else is responsible for the packing, which is the main cause of the injury, but MSC was potentially liable because of problems with the floor, and you acknowledged a moment ago that if, in fact, somebody else was responsible for the packing and MSC covered that on its own, it wouldn't be entitled to identification. So your argument has to be that actually MSC was potentially liable even for the packing too, right? Your Honor, I'd like to clarify. I did not agree that if MSC had voluntarily paid someone else's portion of liability. The scenario that the hypothetical that Your Honor posed was that the court proceedings in state court went to conclusion, went to a judgment, and there were determinations of liability, and yet nevertheless MSC out of some feeling of charity, I guess, decided to pay the entire judgment rather than just a share of liability. Right. Under that scenario, they're definitely a volunteer. Right. They're definitely a volunteer. So your argument depends on the idea that actually given where the litigation was, it was possible that MSC was going to be held liable for the injuries caused by the packing. That's right, and that's what it was. Okay. So then actually that's different from what the district court said, right? No. Pardon me, Your Honor. Let me back it up. First of all, I do think that MSC was potentially liable for the poor packing, and we laid out the arguments for that in our papers, but I can go over them briefly. The expert hired by the plaintiff's counsel gave a number of opinions, and one of them was that the transportation, the act of transporting the container, worsened the poor packing of the goods in the container. And in that regard, he noted that the movement caused by ocean transportation was greater than the movement caused by trucking. And that was one of the theories that Diver alleged in his complaint, was not only was there poorly packed goods in the container and a defect in the container, but that MSC was negligent in its transportation of the container. So we were definitely exposed for having exacerbated the poor packing.  I get that, but does that mean you're asking us to affirm the district court based on our own reading of the record? Because what the district court said was different than that. The district court said there was the packing. That's the actual cause of the injuries. And then when it proceeds to potential liability, it says MSC was potentially liable because of a defect in the floor, right? And they could have been liable to Diver because of the floor and does not find that MSC was potentially liable for any harm caused by the poor packing. I agree the district court did not make that factual finding, but the district court did not need to. Atlanta-Pitchfield doesn't require you to make multiple findings of potential liability. You just need one basis for potential liability to satisfy the standing. And that's as it should be. I mean look at how much time we're devoting to arguing about the actual cause of Mr. Diver's injuries. We shouldn't be doing that. That's what Atlanta-Pitchfield is designed to prevent litigants from having to do. Right. So then do you agree with the sort of premise of my question earlier? The district court didn't need to determine what the actual cause was. It was enough to just say there was potential liability and then therefore there's an identification obligation. Absolutely. I agree there was no need to determine the actual cause of Mr. Diver's injuries. I do think factual findings need to be made. But we have that finding, right? We do. I do think, though, that all that needed to be done was to find that the trigger for one of the indemnity clauses was met. And I think that that is sufficient. And I think we can say— But we're aware a district court has made a specific finding. How do we ignore that? I mean, again, we are at trial here, and the district court has made a specific finding. I'd like to address that with two points. The first is to go back to the text clause 11.4, and that's the indemnity language that we're all talking about here. And it talks about that there's an indemnity obligation for any loss caused to MSC whatsoever or howsoever arising caused by one or more of the matters. So it is contemplated, the parties agree, that there's not a situation where if there's multiple causes, MSC somehow isn't entitled to full indemnity or that indemnity should be apportioned in some way. If the parties intended to apportion indemnity, there would be different language, like to the extent of, for example. That's absent here. So it's— Yeah, so for the indemnity, there wouldn't be apportionment. But I think the idea is that in the original liability, there would be apportionment. So in my hypothetical or a different hypothetical where let's say you had findings, we had findings that said the packing is responsible for 80 percent of the injury, and that liability does not fall on MSC. It falls on the packer, and the floor is responsible for 20 percent of the injury, and that falls on MSC. MSC would be entitled to indemnity for the 20 percent, even if it went out of its way to cover the rest of it. The indemnity is about that. So if, in fact, what the district court here decided was the main cause of the injury was the packing, and maybe the district court did not do this, maybe this is kind of unstated, that MSC is not responsible for the packing, that would be a problem for saying that MSC is entitled to indemnification for the whole—for all of the damages because it would suggest that MSC was acting as a volunteer for that portion. I disagree. I don't think the district court was necessarily intending to make a finding about Mr. Bagger's actual injuries because if you look at the headings of the opinion, those determinations appear in different parts of the decision. And the headings clearly indicate what was the purpose. One was to determine whether potential liability had been determined according to Atlantic Richfield, and then separately, to tell you a separate section of the court's decision, is the assessment of whether the trigger for indemnity under the contract has been met. So I don't see a problem there. I do think that if the court had decided to make an apportionment, it decided to pretend it was the jury in this imaginary trial of Mr. Diver's injuries, and made apportionments, we would be the appellant here because that's not the appropriate procedure under Atlantic Richfield. So that would be problematic, but that's not what happened here. It's kind of odd because really there could have been more than one cause. The approximate cause generally need not necessarily be the only cause. There could have been a number of things that caused it, the floor and or the packing, et cetera. And so it's kind of unusual. He calls it a proximate cause, and he kind of identifies the packing, but that kind of, I guess what he was trying to do was to ensure that the indemnification clause kicked in. Once it kicks in and it's a settlement, the apportionment becomes irrelevant, and then the only question is potential liability as opposed to parsing out the various degrees of responsibility that might be assessed. I think we can thread the needle here. If we look at it this way, the court, when it assessed potential liability, acknowledged that a jury can be unpredictable, and so long as there's not a 100 percent legal basis to avoid liability, these issues would be presented to the jury, and the jury could potentially find any number of findings, including that MSC was more than 60 percent liable. Given that we're talking about a settlement where there's no apportionment, because there's no need for an apportionment, there's a decision to settle, the question is could they have been potentially held liable? They could have been held liable for 20 or 100 percent. It kicks in under Atlantic Ridgefield as long as it's potentially liable. Not solely potentially liable, but potentially liable, right? Right. I don't think the degree matters. And then secondly, the district court said, well, now that I have to interpret a contract to find if there's an indemnity obligation, I guess I get to be the fact finder. But the truth is he would never be the fact finder of the actual cause of Mr. Dyer's case. That would be the jury in a trial that didn't occur because MSC chose to settle. Right. So do you think that the district – so you think it would have been enough for the district court to say MSC is entitled to indemnification because it was potentially liable under one of the grounds in 11.2, which could have been the floor or the package. Right. And the jury could have gone for either one, and therefore it's entitled to indemnification. Or he could have said I find that at minimum at least one of the causes of MSC's loss was the poor package. I find enough evidence in the record to support the activation of that trigger. He doesn't have to say this definitely caused – it was the only cause or the only legal cause of Mr. Dyer's injuries. And he didn't have to rule those out as long as he found that they were all potentially liable under those various causes. So you're saying the district court made more findings than it needed to. Yeah, but I think it's a harmless error. I think that the court can affirm the results under different reasoning with a slight modification if to the extent that's even needed. Because one thing that hasn't been addressed here is that my friend has not appealed from the liability under the warranty provision. And I think in the absence of that, there's no basis to overturn his liability. I can review that if the court needs me to, but it's addressed in my brief. I think we have that argument in the brief. Thank you very much, Mr. Horner. We'll turn back to Mr. Kumpkin on rebuttal. Hello again. With regard to the poor packing of the container, I do want to point out that the district court did make one finding relevant to this discussion. And it was, in the district court's words, MSC paid a settlement for damages that contemplated liability caused by the packing of the granite slabs in the container, not only its own activity. Can you tell us the appendix page for that or not? I can, Your Honor. It is A-106. Thank you. You're welcome, Your Honor. With regard to Clause 14.3, I'm a little bit surprised that that's being made a separate issue in this case for the simple reason that the district court's discussion about 14.3 was one paragraph long. And that paragraph concluded that the same analysis applies to 14.3 as it applied in 11.2, and it's that analysis that's being appealed. And in the court's one paragraph, it states that Airlift agrees that it's the same analysis. So I still agree it's the same analysis. What I'm taking issue with is the analysis that was applied, the theories that it was applied, its application of Atlantic Ridgefield. And as much as we talk about or counsel talks about the principles of Atlantic Ridgefield, Atlantic Ridgefield didn't go very far. Atlantic Ridgefield held that the party seeking indemnity never showed potential liability and, therefore, there was no claim. It never said if there was a next step. It never looked at – Wait a second. 14.3 says that the merchant warrants the goods are safely and securely packed in the container. Warrants. Yes, Your Honor. It doesn't talk about indemnifying. Warrants. And you didn't contest the finding that the warranty had been breached. Did you? Stipulated facts alone.  No, Your Honor. Then are you – did you not then breach your warranty? Yes, but what are the damages? And that's why we're here. What are the damages? Mr. Diver's injury because they weren't safely packed. 14.3 doesn't benefit Mr. Diver. 14.3 – No, of course it doesn't. But when the person that has the benefit of the warranty is cast in liability because of your breach of the warranty, yours certainly can be held accountable for that breach. That is called indemnification by breach of warranty. Assuming – I mean, that's very simple. Assuming that MSC was liable to Mr. Diver, it was not because we breached the warranty. It was because of the floor. Let me ask you this. Yes, Your Honor. If you made that warranty and the container fell off the ship and into the ocean and MSC got sued by all the merchants that were – all the people that had contracted with MSC to get their goods shipped to the United States, could they then turn around and sue you for whatever they had to pay to those people? Only if somehow the breach of that warranty caused MSC damages. I said that the ship – you warranted that it was in a good and safe condition. Yes, but I don't see how the container falling off the ship caused the damages. So here – You can answer that question. But here, MSC's exposure to Mr. Diver was for its acts. MSC was not liable to Mr. Diver for the improper loading. What are you talking about? I mean, that's a state court action. MSC owned the container. Owners are responsible to third parties that are injured when there's a dangerous condition over which they have control. I don't understand your theory there. It makes no sense to me. The condition they have control of is the floor and the condition of the exterior of the container. They received a sealed container. If you walk into a – if you walk onto a – if you walk into a home and you trip over something because it's dangerous, you get to sue the person that owns the home, don't you? Yes. That's something they have control over. Okay. And there may be arrangements between the owner of the home and others with regard to maintenance of the floor. And the owner of the home may turn around and sue that person because they maintained the floor improperly for them. But that doesn't mean that you can't sue the owner. I don't understand what you're – You're confusing the contractual arrangements and the assumptions and responsibilities between Airlift and MSC as somehow limitations on Diver with regard to whom he can sue. That's not the case. Mr. Diver can sue anybody he wants. At the end of the day, I'm a little surprised that counsel for MSC is saying that he would be responsible to – MSC's responsibilities to Diver are a function of common law of the state of New Jersey. And that goes to acts within its control, not the condition inside a sealed container. That's not what you're arguing. So I get your argument that the decision is complicated because the district court decided that the packing was the cause of the injury and suggested that MSC was not responsible for the packing. Yes, Your Honor. I get that. But the remaining findings, why is it enough for the district court to have said, okay, the injury was caused by the packing, but there was potential liability based on the floor, and a jury could have decided that the floor was 60 percent responsible for the injury and that would have put MSC on the hook even for all of the injury caused by the packing. And if that was a possible outcome of litigation, then it means that MSC was still potentially liable for the whole thing, would it not? It would be, but two responses to that. One, the court did make the step of doing the Buckford analysis. Two, if that condition of the floor was not apparent at loading, MSC by contract – Right, so then we have to go to that idea about whether it was apparent at loading, whether it was possible for a jury to decide whether it was apparent or not. Correct, Your Honor. Okay, so it would depend on that argument? Yes, Your Honor. And the district court didn't make a finding either way on that question? That is correct, Your Honor. Okay. Thank you. All right, thank you very much. Thank you for your time. The case is submitted.